UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

STEVEN FORSHEY,

                Plaintiff,

v.                                                9:17-CV-575 (LEK/ATB)

CHRISTOPHER MILLER, et al.,

                Defendants.

---

STEVEN FORSHEY, Plaintiff, pro se
MATTHEW P. REED, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge. Plaintiff brought this civil rights action claiming that he was denied constitutionally adequate medical care while he was incarcerated at Great Meadow Correctional Facility ("Great Meadow"). (Complaint ("Compl.")) (Dkt. No. 1).

Presently before the court is defendants' motion to dismiss portions of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] (Dkt. No. 76). Plaintiff responded in opposition to the motion. (Dkt. No. 90, 92). For the following reasons, this court recommends granting defendants' motion, and dismissing all of plaintiff's claims

---

[1] Plaintiff has also alleged that defendant Thompson and Harris provided constitutionally inadequate care for his back pain, and that defendant Harris interfered with his receipt of new prescription eyeglasses. (Compl. at 20-21, 27, 35). Defendant Thompson has not moved to dismiss the medical indifference claim related to plaintiff's back pain. Defendant Harris filed an answer to the complaint but has not moved to dismiss the medical indifference claims against her. (Dkt. No. 76-1, at 3 n.1; Dkt. No. 77).

against defendants Krandy, Koenigsmann, Miller, Bellamy, Kuinlan, Beebe, and Green for lack of personal involvement, and dismissing plaintiff's claims that all defendants were deliberately indifferent to his medical needs arising from foot pain and low weight, for failure to state a claim.

**I.    Facts**

Judge Kahn's August 18, 2017 Decision and Order summarized the facts as alleged in plaintiff's complaint, so I will briefly restate only the facts relevant to this motion. (Dkt. No. 11, at 3-6). On June 2, 2014, plaintiff was seen by a podiatrist for a painful mass on his left foot. (Dkt. No. 1-1, at 9). In his treatment notes, the podiatrist reported that "I think that the best way to treat this is to get him as comfortable as possible. We are going to send him . . . for boots and inserts. We will see him back on an as needed basis." (*Id*.)

Despite this recommendation to get him as comfortable as possible, plaintiff contends that defendants instead provided him with state-issued boots that were not orthopedic and were "not custom made to relieve the pain, pressure and relief needed from the injury to the left foot." (Compl. at 29). He further contends that the provided boots "must have been defective when issued," because they became torn and damaged beyond ordinary wear and tear. (*Id*.) Plaintiff continued to suffer from foot pain while wearing these boots. (Compl. at 28).

On December 20, 2016, plaintiff had a medical appointment with defendant Thompson to seek treatment for his back pain, and to request the return of a previously issued Transcutaneous Electric Nerve Stimulation ("TENS") unit that had been confiscated from him. (*Id*.) During the appointment, defendant Harris, a Nurse

2

Administrator, loudly intervened and refused to reissue the TENS unit. (*Id*.) At the same visit, plaintiff attempted to address his concerns regarding his foot injury and the need for orthopedic boots, but defendant Thompson abruptly ended the appointment after defendant Harris's outburst. (*Id*.) Although the timing is unclear, defendant Thompson was also aware that plaintiff was underweight, but refused to approve "double portions" of meals or nutritional supplements that would help plaintiff gain weight. (Compl. at 21).

Plaintiff alleges that defendants Miller, Krandy, and Koenigsmann's supervisory roles at Great Meadow made them aware of the poor medical care that he was receiving. (Compl. at 10-11, 19). He further alleges that these defendants failed to direct their staff to provide him appropriate and necessary medical care. (*Id*.) Likewise, plaintiff alleges that defendants Miller, Bellamy, Kuinlan, Beebe, and Green were made aware of the deficient care through the grievance process, and failed to address the problems.[2] (Compl. at 22).

## II.  Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,

---

[2] Plaintiff named a number of John Doe defendants in his complaint. (Compl. at 12-20). On September 18, 2017, counsel for defendants made probable identification of these defendants, and provided their names to plaintiff and the court. (Dkt. No. 15). On September 25, 2017, the court ordered plaintiff's complaint to be deemed amended to replace the Doe defendants with defendants Harris, Koenigsmann, Beebe, Kuinlan, Green, and Bellamy, and plaintiff arranged for service on these defendants. (Dkt. No. 21, 40, 49).

3

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice.[3] *Portillo v. Webb*, No. 16 Civ. 4731 (VEC/GWG), 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## III. Personal Involvement

### A. Legal Standard

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to

---

[3] In opposition to defendants' motion, plaintiff filed a number of new exhibits, including a selection of documents related to the grievance process. (Dkt. No. 90-1, "Book of Newly Submitted Exhibits").  A court may, in its discretion, consider a pro se prisoner's response to a motion to dismiss as "effectively amend[ing] the pleading." *Hartley v. Devlin*, 9:14-CV-1366 (GLS/CFH), 2016 WL 1175227, at *2 (N.D.N.Y. March 24, 2016).  Because it does not appear that plaintiff intended that the new exhibits would alter the contentions in the complaint, this court has followed the general rule limiting its review to the original pleadings. Accordingly, this report-recommendation is based only on plaintiff's complaint and the exhibits originally filed therewith. (Dkt. Nos. 1, 1-1).

individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

**B.     Application**

Plaintiff alleges in his complaint that defendant Krandy, as medical director at Great Meadow, was "responsible for the day-to-day supervision of his staff," including defendants Thompson and Harris. (Compl. at 11). He similarly alleges that defendant Koenigsmann, as Chief Medical Officer for the New York State Department of Corrections and Community Supervision ("DOCCS"), directed and ordered the other defendants to deny him custom orthopedic footwear, "in efforts of saving the state money." (Compl. at 19). Plaintiff's minimal references to defendants Krandy and Koenigsmann never allege any actions that would give rise to supervisory liability.

Likewise, plaintiff makes a brief reference to defendant Miller's responsibility as superintendent "or enforcing [DOCCS] directives and in supervising Great Meadow's management in such a manner as to provide for the health, safety, and well-being" of inmates, but this general description of Miller's supervisory role does not allege his personal involvement in the constitutional violations alleged in the complaint. (Compl. at 10). *See Graham v. Wright*, 2003 WL 22126764, at *1 (S.D.N.Y. Sept. 12, 2003) ("It is well established that supervisory officials are generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment."). Plaintiff's speculative contention that the supervisors knew or should have known what their subordinates were doing is therefore insufficient to establish their personal involvement in the alleged constitutional violations.

Defendants Kuinlan, Beebe, and Greene were members of the Inmate Grievance Resolution Committee ("IGRC") that denied plaintiff's grievance regarding his medical

6

care. (Compl. at 15-17, 22). Defendants Miller and Bellamy denied plaintiff's appeals at the superintendent and Central Office Review Committee ("CORC") level. (*Id.*) Plaintiff has raised medical indifference claims against each of these defendants, despite their lack of direct involvement in plaintiff's medical care. Courts in the Second Circuit are divided on whether an official's review and denial of a grievance can establish personal involvement. *See Wright v. Stallone*, No. 9:17-CV-487 (LEK/TWD), 2018 WL 671256, at *7 (N.D.N.Y. Jan. 31, 2018) (collecting cases). In *Wright*, Judge Kahn adopted the "majority view" that "an officer tasked only with reviewing an administrative determination is not 'personally involved' even if the underlying determination implicates a plaintiff's constitutional rights," and dismissed an inmate's claims against members of the IGRC and CORC. *Id.* at *8. The same analysis would apply here, because plaintiff has only alleged that these defendants reviewed and denied his grievance or subsequent administrative appeals.[4]

Dismissal is particularly appropriate here, where the grievance determinations related to plaintiff's medical care. *See Battle v. Recktenwald*, No. 14 CV 2738 (VB), 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016) ("defendant's denial of an administrative grievance or a refusal to override the medical advice of medical personnel are insufficient to establish liability for an Eighth Amendment violation . . . . This rule is grounded in the principle that a plaintiff must allege defendants' personal

---

[4] In his August 18, 2017 Decision and Order, Judge Kahn found that plaintiff had sufficiently alleged the personal involvement of these defendants for purposes of initial review, but expressed no opinion as to whether plaintiff's claims could withstand a properly filed dispositive motion from defendants. (Dkt. No. 11, at 12). In light of defendants' properly filed motion to dismiss, and the analysis set forth in Judge Kahn's more recent decision in *Wright*, dismissal for lack of personal involvement is consistent with the majority approach in this Circuit.

involvement in the claimed violation of his rights."); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (finding that a prison official deciding grievance related to medical care may "rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners and cannot be held to have been 'personally involved' if he does so.") Accordingly, this court recommends that defendants' motion to dismiss for lack of personal involvement be granted with respect to all claims against defendants Krandy, Koenigsmann, Miller, Bellamy, Kuinlan, Beebe, and Green.

## IV. Medical Care

### A. Legal Standard

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

#### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first

question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a

"negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id*. Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

**B.     Application**

Defendants have moved to dismiss plaintiff's claim that defendants violated the Eighth Amendment by their failure to provide him with custom orthopedic boots to remedy his foot pain, and their refusal to authorize additional food and/or nutritional supplements to address his low weight.  As explained below, this court agrees with defendants that neither claim rises to the level of deliberative difference under the Eighth Amendment, and recommends dismissal of these claims.

**1.     Objective Element**

Plaintiff claims that the failure to provide him with custom orthopedic shoes has exacerbated the pain from a mass on his left foot. (Compl. at 29-30).  Courts in this Circuit have consistently found that foot pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy the objective prong of the deliberate indifference standard.  *See Stevens v. City of New York*, No. 12 Civ. 3808 (JMF), 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013) ("pinched nerves, calluses, bleeding heels and back and leg problems" allegedly caused by prison-issue footwear were not a sufficiently serious medical problem); *Williams v. Dep't of Corr.*, No. 11 Civ. 1515 (SAS), 2011 WL 3962596, at *4 (S.D.N.Y. Sept. 7, 2011) (dismissing Eighth Amendment claim that DOCCS-issued footwear was "poorly constructed with no support for the foot or cushion for the soles"); *Veloz v. New York*, 35 F. Supp. 2d 305, 309 (S.D.N.Y. 1999) (prisoner's foot problem, which involved arthritis and pain, did not constitute a serious medical need).  In this case, plaintiff has not alleged that his foot pain "offended contemporary standards of decency," or posed "an unreasonable risk of serious damage" to his future health.  Even when read in the light most favorable

to plaintiff, the complaint only alleges: (1) that a physician recommended that plaintiff receive more comfortable boots and inserts, and (2) that the boots and inserts provided by the facility were not the custom orthopedic shoes that plaintiff prefers. (Compl. at 29; Dkt. No 1-1, at 9). Plaintiff has not alleged that any defendant ignored a physician's prescription for custom orthopedic shoes. *See Black v. Petitinato*, 16 Civ. 3941 (BMC/RLM), 2016 WL 3983590, at *5 (E.D.N.Y. July 25, 2016) ("distinction must be noted between those [cases] where a doctor has specifically described special footwear and prison guards have refused to comply, and those where a prison doctor has exercised professional judgment and determined that such footwear is not necessary"); *c.f. Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *13-14 (S.D.N.Y. March 26, 2013) (denying motion to dismiss where defendants had ignored multiple medical permits that authorized plaintiff to wear custom sneakers to alleviate extreme back and ankle pain).

Likewise, plaintiff has failed to allege that his "underweight" status rises to the level of a sufficiently serious medical condition. The complaint provides no information regarding the scope of the problem, or whether his low weight was caused by a medical issue. Instead, plaintiff merely speculates that his inability to gain weight may be a cause of his back pain. (Compl. at 21). This appears to be a self-diagnosis, since the complaint does not refer to any diagnosis by a medical professional that (1) plaintiff was underweight, or (2) that his weight loss was the cause of pain or any other physical harm.[5] *See Evans v. Albany Cty. Corr. Facility*, No. 9:05-CV-1400, 2009 WL

---

[5] Plaintiff included an August 7, 2012 Sick Call Response form from a different correctional facility as an exhibit to his complaint. (Dkt. No. 1-1, at 16). That document shows

1401645, at *9 (N.D.N.Y. May 14, 2009) ("To establish a valid claim that the denial of food (or the denial of a medically proscribed diet) constitutes an Eighth Amendment violation, one must establish that there was a "sufficiently serious condition" that resulted from the food not being received.").

### 2. Subjective Element

Even if plaintiff had met the objective standard for either his foot pain or low weight, dismissal would still be appropriate because plaintiff failed to satisfy the subjective prong of the deliberate indifference standard. Plaintiff provided documentary evidence that a physician recommended that he be made "as comfortable as possible," and receive "boots and inserts" to address the painful mass on his left foot. (Dkt. No. 1-1, at 9). He alleges that he was provided some footwear, but it did not relieve his pain and discomfort. (Compl. at 23). He further alleges that he attempted to raise his footwear concerns during a medical appointment on December 20, 2016, but was unsuccessful because defendant Thompson "was rushing just to get [p]laintiff out of his office" after defendant Harris' verbal outburst. (Compl. at 30). Plaintiff also alleges that he requested that defendant Thompson approve additional food portions or nutritional supplements, but defendant Thompson refused, because those measures were typically allowed only for inmates that had human immunodeficiency virus ("HIV"). (Compl. at 21).

At most, plaintiff has alleged that defendants were negligent by not making

---

that plaintiff's request for "double portions" of meals had been denied, but it does not address any underlying medical causes for his low weight, and precedes his confinement at Great Meadow by almost two years. (Compl. at 9).

13

further inquiry into plaintiff's concerns about his footwear and diet. However, it is well settled that negligence is insufficient to support a deliberate indifference claim. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). The deliberate indifference standard "requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to liability." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). Accordingly, plaintiff has failed to allege that defendant Thompson or any other named defendant acted with a sufficiently culpable state of mind when they refused his request for custom orthopedic footwear or additional food/supplements.

## V. **Opportunity to Amend**

### A. **Legal Standard**

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint."

### B. **Application**

It is conceivable that better pleading may cure the defects in plaintiff's complaint. Therefore, if the District Court adopts my recommendation to grant defendants' partial motion to dismiss, then I further recommend that dismissal of those

claims be without prejudice to plaintiff amending his complaint solely to address the defects identified herein, within thirty (30) days of Judge Kahn's order approving this Report-Recommendation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' partial motion to dismiss (Dkt. No. 76) be **GRANTED** with respect to all claims against defendants Krandy, Koenigsmann, Miller, Bellamy, Kuinlan, Beebe, and Green, as well as the deliberate indifference claims against all defendants arising from plaintiff's foot injury and underweight status, and it is further

**RECOMMENDED**, that such dismissal be **WITHOUT PREJUDICE** to plaintiff submitting a proposed amended complaint to address the defects identified in this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: November 7, 2018

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge